UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LORI S.[1],                                               Case No. 1:20-cv-732
    Plaintiff,                                       Litkovitz, M.J.

vs.

COMMISSIONER OF                                ORDER
SOCIAL SECURITY,
    Defendant.

Plaintiff Lori S. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 16), the Commissioner's response in opposition (Doc. 22), and plaintiff's reply memorandum (Doc. 23).

I. Procedural Background

Plaintiff protectively filed an application for disability benefits on March 26, 2018, alleging disability since September 3, 2013, due to a learning disability/limited intellectual functioning, schizophrenia, and high blood pressure. (Tr. 148, 175). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Shreese M. Wilson on October 22, 2019. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing. (Tr. 35-74). On November 6, 2019, the ALJ issued a decision denying plaintiff's DIB application. (Tr. 12-

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

28). Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i) -(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] last met the insured status requirements of the Social Security Act on June 30, 2014.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity during the period from her alleged onset date of September 3, 2013 through her date last insured of June 30, 2014 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the [plaintiff] had the following severe impairment: learning disability (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, [the ALJ] finds that, through the date last insured, the [plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she was limited to tasks that can be learned within 30 days that were routine in nature. She could have no hourly production quotas. She was limited

to no more than occasional interaction with the general public, coworkers and supervisors.

6. The undersigned makes an expedited finding with regard to past relevant work.

7. The [plaintiff] was born on January 30, 1988 and was 26 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because all potentially applicable medical-vocational guidelines would direct a finding of "not disabled," given the [plaintiff]'s age, education and residual functional capacity (20 CFR 404.1568).

10. Through the date last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from September 3, 2013, the alleged onset date, through June 30, 2014, the date last insured (20 CFR 404.1520(g)).

(Tr. 17-24).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Error**

On appeal, plaintiff raises a single assignment of error: that the ALJ's decision is not supported by substantial evidence because the ALJ failed to consider plaintiff's application for disability benefits as one for Supplemental Security Income ("SSI") as well as one for DIB. (Doc. 16). Plaintiff specifically alleges that the ALJ erred by failing to consider any evidence beyond June 30, 2014, plaintiff's date last insured, to determine whether plaintiff met the

requirements for SSI benefits. (*Id*. at PAGEID 618). The Commissioner argues that the ALJ's decision is supported by substantial evidence, and the ALJ reasonably treated plaintiff's application as one for DIB and not SSI. (Doc. 22). The Court finds the ALJ's decision to not treat plaintiff's application for DIB as one for SSI as well is not supported by substantial evidence.

Plaintiff filed a single application for disability benefits on March 27, 2018. It is clear from the context of the application summary contained in the record that plaintiff spoke with a Social Security representative to apply for disability benefits. The document is entitled "Application Summary for Disability Insurance Benefits." (Tr. 148). The application summary states, "On March 27, 2018, we talked with you and completed your application for SOCIAL SECURITY BENEFITS." (*Id.*). The Commissioner contends that plaintiff expressed her intent to apply solely for DIB because the application summary includes the typewritten statement, "I do not want to file for SSI." (*Id.*). Plaintiff contends that there is no logical explanation for plaintiff to make a decision not to apply for SSI benefits, given the circumstances and timing of her application and the evidence indicating that plaintiff wished to apply for all benefits to which she may be entitled. Plaintiff further contends that it is unlikely she would have made such a statement of her own accord in response to verbal questions by a Social Security employee. At the time she applied for disability benefits, plaintiff had recently been discharged from the hospital after being admitted for schizophrenia and had previously been tested in the lower second to third percentile of intellectual functioning. (Tr. 384, 439, 462).

For the reasons that follow, the Court finds the decision of the ALJ to not consider the disability application as one for SSI benefits is not supported by substantial evidence. In light of plaintiff's limited intellectual functioning and limitations from schizophrenia, as well as the concurrent record evidence indicating plaintiff in fact intended to apply for SSI benefits, this matter is reversed and remanded for consideration of plaintiff's eligibility for SSI benefits.

Plaintiff, who lives with her parents and has never lived independently, has a long history of a learning disability. (Tr. 19). She attended special education classes beginning in second grade and throughout high school. (*Id.*). Testing revealed a full scale IQ of 72. (*Id.*). Plaintiff tested in the second percentile on the Woodcock-Johnson Psycho-Educational Battery III, Tests of Achievement (Tr. 462) and in the third percentile on the Woodcock-Johnson Tests of Cognitive Ability. (Tr. 439). She was previously fired from two childcare positions due to job performance. (Tr. 20). She was also employed for five months by Dunkin Donuts. She was unable to make change and taken off the cash register and directed to wash dishes. Her hours were drastically reduced and she eventually left that job because her boss was "scary." (Tr. 20-21).

Plaintiff began experiencing auditory hallucinations in 2017. On February 19, 2018, plaintiff experienced a psychotic episode and was taken by ambulance to the emergency department. (Tr. 276). The clinical impression was psychosis and auditory hallucinations. (Tr. 281). She was involuntarily admitted to the hospital for eleven days. (Tr. 285-339). During her hospitalization, hospital records reflect that plaintiff was consistently disoriented, experienced auditory hallucinations, and displayed impaired memory and profound confusion, no to poor

insight, poor judgment, and impaired attention and concentration.  (Tr. 293, 297, 298-99, 301-02, 306-07, 311, 315 321-22, 327).  She was discharged on March 1, 2018 with a diagnosis of schizophreniform disorder and developmental delay, mild.  She appeared to be in stable condition and close to baseline functioning.  (Tr. 333, 339).

On March 1, 2018, the same day she was discharged from the hospital, plaintiff was evaluated by Greater Cincinnati Behavior Health ("GCBH").  When asked about her current mental health symptoms (frequency, onset, and duration), plaintiff "stated that she wasn't sure what [the] writer was asking."  (Tr. 419).  The evaluation stated that plaintiff had poor insight into her mental illness and relied on her mother to do most things for her.  (*Id*.).  Intake notes reflect that plaintiff had been in special education, she had a specific learning disability in processing, had no concept of time, and struggled with understanding and working with numbers.  (Tr. 420).  She also had a hard time with memory recall.  (Tr. 421).  Plaintiff had marked limitations in her activities of daily living, dysfunctional communication, "very severe limitations in problem solving," and limited independence in using community resources and was reliant on helpers to gain access.  (Tr. 425).

Plaintiff's judgment/impaired ability to make reasonable decisions was assessed as poor.  (Tr. 429).  The comment section of the diagnostic assessment form states:

> [Plaintiff] struggled with memory recall even over the most basic of questions, for example she could not remember if she completed any schooling, she was not sure if she graduated high school and went to college.  [Plaintiff] was soft spoken, maintained little eye contact, was easily confused, distracted by internal stimuli, thought blocking, could not recall why she was in the hospital outside of having a high fever, did not remember she received an injection an hour before.  [Plaintiff] has a poor sense of time, was not aware of the current date and believed the interview went on for almost two hours (at that point it was only 30 min[utes].

(*Id.*).

It was in this context that plaintiff applied for disability benefits on March 27, 2018, which was less than one month after she was discharged from the hospital. There is nothing in the record showing that anyone other than plaintiff initiated the application with Social Security to apply for disability benefits,[2] and it is undisputed that plaintiff was not represented during the initial and reconsideration process. (Tr. 75, 83). It is clear from the record that it was plaintiff's psychotic episode in February 2018 that prompted her application for disability benefits, coming on the heels of her involuntary hospitalization. The GCBH records show that plaintiff, who was 30 years old at the time, had no income. (Tr. 416). The records from GCBH indicate that in the weeks prior to her application, plaintiff was receiving help from a GCBH case manager to apply for public assistance benefits intended for individuals who have limited or no income and are disabled, including both Medicaid and SSI. (Tr. 415-"coordinated for SSI application"; Tr. 416- case manager met with plaintiff to complete application for disability, discuss Medicaid, and assist plaintiff "with applying for SSDI to obtain an income"; Tr. 407- plaintiff "is working to obtain SSI/SSDI"). In addition, the record shows that plaintiff's mother was in the process of seeking power of attorney for plaintiff's medical and financial needs. (Tr. 410). (*See also* Tr. 333 (an expert evaluation was completed while plaintiff was hospitalized for her parents to obtain guardianship); Tr. 422 (mental health assessment states mother is applying for guardianship)). While the Social Security form entitled "Application Summary for Disability

---

[2] "On March 27, 2018, we talked with you and completed your application for SOCIAL SECURITY BENEFITS." (Tr. 148). When plaintiff's mother had contact with Social Security representatives, the records so reflect. (*See, e.g.,* Tr. 207).

Insurance Benefits," which reflects a "summary of your [plaintiff's] statements," includes the typewritten statement, "I do not want to file for SSI," this statement is inconsistent with the timing of plaintiff's application based on her recent hospitalization for schizophrenia and the records showing that plaintiff was receiving help in applying for medical and financial public assistance based on her disability. In addition, the contemporaneous notes from GCBH indicate that plaintiff struggled to answer even the most basic questions, was easily confused, was distracted by internal stimuli and thought blocking, had dysfunctional communication, and had "very severe limitations in problem solving." (Tr. 425, 429). It seems highly unlikely that plaintiff, with all of these limitations and who at the time of her application suffered from serious mental health issues and a learning disability, would disavow an intent to apply for SSI benefits. The Court notes that plaintiff was not represented at the time she applied for disability benefits, and that her mother, who was attempting to become plaintiff's legal guardian, was not familiar with the Social Security disability application process. (*See* Tr. 407 (plaintiff "is working to obtain SSI/SSDI," and the case manager's notes reflect that she spoke with plaintiff's mother about a letter she received from social security and "was confused about what she needed to do and what the letter meant")).

Plaintiff's actions subsequent to the initial denial of benefits also reflect an intent to apply for SSI benefits. After plaintiff's application was denied initially, plaintiff requested reconsideration. (Tr. 95). Her request for reconsideration states:

> I request a reconsideration. I disagree with the determination made on my claim for disability-worker or child benefits because Lori's notice stated that she was claiming disability from the date of her last employment which is true for her

> learning disability but not schizophrenia. She was diagnosed with schizophrenia in 2018.

(*Id.*). The reconsideration request expresses a tacit understanding that plaintiff's schizophrenia, which was not diagnosed until 2018, was separate and apart from the learning disability that was the basis for the DIB application, which required plaintiff to prove disability by her 2014 date last insured. This request for reconsideration should have put the Social Security Administration on notice that plaintiff was inquiring about other disability benefits to which she may be entitled, to wit, SSI.

After plaintiff was denied disability benefits initially and on reconsideration, she obtained the assistance of counsel. Counsel's actions are consistent with an understanding that plaintiff had intended to apply for both DIB and SSI. The appointment of representative form indicates counsel was representing plaintiff for both Title II and Title XVI benefits. (Tr. 104). In his pre-hearing memorandum to the ALJ, plaintiff's counsel argued that plaintiff met the Listing for schizophrenia. (Tr. 267-70). Because plaintiff was not diagnosed with schizophrenia until 2018, and did not begin having auditory hallucinations until 2017, some four years after plaintiff's insured status expired, such an argument would be meaningless unless plaintiff had also intended to and believed she had applied for SSI benefits.

The Commissioner contends that at the ALJ hearing, counsel confirmed that plaintiff had only applied for DIB. The colloquy between the ALJ and plaintiff's counsel is not so clear. At the beginning of the hearing, the following colloquy occurred:

> ALJ: I feel certain Mr. Kennedy [plaintiff's counsel] has already talked to you [plaintiff] about the types of benefits for which you've applied so I am not going to go into any detail about them; but, I'll confirm with Mr. Kennedy – I do show I

> have only a Title II application. We show a filing date, March 26th of 2018. I show an alleged onset date, September 3rd, 2013; a date last insured that did expire July 30, I'm sorry, June 30th, 2014. Is that consistent with what you show?
>
> Mr. Kennedy: I think it is. Let me just check the DLI. Yes. That's correct.
>
> ALJ: June 30th, 2014?
>
> Mr. Kennedy: Right.

(Tr. 37-38). Counsel's response appears to be directed at the ALJ's confusion over the date last insured, which the ALJ initially and mistakenly stated was July 30, 2014 and not whether plaintiff had applied solely for DIB and not SSI benefits. The Court is not persuaded that this colloquy supports the Commissioner's argument in this regard.

The Commissioner also argues that the Social Security regulations require that a claimant actually file an application for SSI benefits to be eligible for such benefits, and plaintiff did not file an SSI application. (Doc. 22 at PAGEID 639, citing 20 C.F.R. § 416.310(a) ("An application will be considered a claim for benefits, if the following requirements are met: (a) An application form prescribed by us must be filled out.")). The Commissioner acknowledges, however, that when a person applies for benefits under Title II (DIB), the Social Security Administration "will explain the requirements for receiving SSI benefits and give the person a chance to file an application for them if" certain requirements, which apply in this case, are met. *See* 20 C.F.R. § 416.350(a). Where, as here, an application for DIB under Title II prompts an inquiry about SSI benefits, the regulations provide:

> If the person applying for title II benefits does not file an application for SSI on a prescribed form when SSI is explained to him or her, *we will treat his or her filing of an application for title II benefits as an oral inquiry about SSI*, and the date of

>the title II application form may be used to establish the SSI application date if the requirements of § 416.345 (d) and (e) are met.

20 C.F.R. § 416.350(b) (emphasis added). The oral inquiry about SSI benefits, in turn, triggers additional requirements:

>We will use the date of an oral inquiry about SSI benefits as the filing date of an application for benefits only if the use of that date will result in your eligibility for additional benefits and the following requirements are met:
>
>(a) The inquiry asks about the claimant's eligibility for SSI benefits.
>
>(b) The inquiry is made by the claimant, the claimant's spouse, or a person who may sign an application on the claimant's behalf as described in § 416.315.
>
>(c) The inquiry, whether in person or by telephone, is directed to an office or an official described in § 416.310(b).
>
>(d) The claimant or a person on his or her behalf as described in § 416.315 files an application on a prescribed form *within 60 days after the date of the notice we will send telling of the need to file an application.* The notice will say that we will make an initial determination of eligibility for SSI benefits if an application form is filed within 60 days after the date of the notice. (We will send the notice to the claimant or, where he or she is a minor or incompetent, to the person who made the inquiry.)
>
>(e)(1) The claimant is alive when the application is filed on a prescribed form. . . .

20 C.F.R. § 416.345 (emphasis added).

Under subsection (d) of the regulation, the condition precedent to the requirement of filing an application on a prescribed form where an oral inquiry about SSI benefits is made is notice advising the claimant of the need to file an application. 20 C.F.R. § 416.345(d).

Plaintiff's initial application for disability benefits constituted an oral inquiry for SSI benefits. 20 C.F.R. § 416.350(b). The record shows plaintiff had no income and was applying for benefits on the basis of a disability. This oral inquiry should have resulted in a notice

13

advising plaintiff that she was required to file an SSI application within 60 days. 20 C.F.R. § 416.345(d). There is no evidence that plaintiff received such a notice at the time of her application for disability benefits, and the Court is not persuaded that plaintiff knowingly waived her right to such notice by virtue of the single statement on the application summary purporting to disavow any intent to apply for SSI benefits in light of all the other contrary evidence: plaintiff filed her first and only application for disability benefits only after she was hospitalized for schizophrenia; this application was made less than one month after her involuntary hospital admission; GCBH notes in the weeks prior to plaintiff's filing indicate plaintiff was receiving help with applications for cash and medical benefits, specifically for SSI and Medicaid; plaintiff was not working at the time and had not worked since 2013 and had no income; hospital and GCBH notes also reveal that plaintiff's parents were applying to obtain guardianship over plaintiff; and plaintiff's ability to answer "the most basic questions" was seriously compromised at the time she applied and purportedly disavowed a desire to apply for SSI benefits. Viewing the record as a whole, plaintiff's application for disability benefits should have been construed as an oral inquiry for SSI benefits and plaintiff should have been given notice she had 60 days within which to file an SSI application on a prescribed form.[3] Because that did not happen in this case, the ALJ's adjudication of the disability application solely under Title II, and not Title XVI, is not supported by substantial evidence and is reversed.

---

[3] The Commissioner's contention that Program Operations Manual System ("POMS") GN 0024.020(B)(1), *see* https://secure.ssa.gov/poms.nsf/home!readform, supports the conclusion that plaintiff's DIB application could not have served as an SSI application is not well-taken. The POMS is used internally by employees of the Social Security Administration in evaluating Social Security claims and does not have the force and effect of law. *Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989). Given Social Security's failure to provide plaintiff with a notice that she was required to file an SSI application within 60 days under 20 C.F.R. § 416.345(d), the POMS guidance is not persuasive.

**IT IS THEREFORE ORDERED THAT:**

The decision of the Commissioner is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this Order.

Date: 12/14/2021

Karen L. Litkovitz
Chief United States Magistrate Judge